STATE, Respondent, v. WERSTEIN and others, Appellants.

*No. State 74. Argued October 3, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 437.)

For the appellants there was a brief by *Sara Joan Bales* and *Edhlund & Bales* of Milwaukee, and oral argument by *Sara Joan Bales*.

For the respondent the cause was argued by *Christine M. Wiseman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. The sole issue on appeal is whether the evidence was sufficient as a matter of law to support the defendants' conviction for disorderly conduct.

Wisconsin's disorderly conduct statute, sec. 947.01 (1), in part provides:

"In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance."

The evidence shows that the defendants did not engage in that conduct specifically proscribed by sec. 947.01 (1), Stats. It is therefore necessary to determine whether the conduct was in fact "otherwise disorderly."

Wisconsin's disorderly conduct statute proscribes conduct in terms of results which can reasonably be expected therefrom, rather than attempting to enumerate the limitless number of antisocial acts which a person

could engage in that would menace, disrupt or destroy public order.[2] Such is especially true in regards to the "otherwise disorderly" proscription wherein the relatedness of conduct and circumstances is of ultimate importance.

"This court's emphasis upon the relatedness of conduct and circumstances in the statute is no more than a recognition of the fact that what would constitute disorderly conduct in one set of circumstances, might not under some other. When a famed jurist observed, 'The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic,' the comment related to the crowdedness of the theater as well as to the loudness of the shout. It is the combination of conduct and circumstances that is crucial in applying the statute to a particular situation." *State v. Maker* (1970), 48 Wis. 2d 612, 616, 180 N. W. 2d 707.

A careful review of those cases interpreting the "otherwise disorderly" provision will demonstrate the importance of a coalescing of conduct and circumstances. In *State v. Givens* (1965), 28 Wis. 2d 109, 135 N. W. 2d 780, we affirmed a conviction for disorderly conduct of several demonstrators who conducted a "sit-in" in a small municipal office. We found that the "otherwise disorderly" conduct of the demonstrators may not in another situation be criminally proscribed, but because of the circumstances therein involved—the forcible entry into and congesting of a small office thereby making its continued functioning impossible—their conduct was in fact disorderly. Likewise in *State v. Zwicker, supra,* we deemed the obstruction of the hallways and the use of signs under the circumstance therein involved to constitute disorderly conduct. Under varying circumstances,

---

[2] *State v. Zwicker* (1969), 41 Wis. 2d 497, 508, 164 N. W. 2d 512, dismissed (1969), 396 U. S. 26, 90 Sup. Ct. 199, 24 L. Ed. 2d 147.

the displaying of a sign would not be deemed disorderly. Finally, in *State v. Elson,* ante, p. 54, 208 N. W. 2d 363, we upheld the conviction of an attorney for too vigorously disputing the denial of his right to converse with his client because of the fact that such protestation occurred in the ward of a mental hospital.

In each of these cases, convictions for being "otherwise disorderly" resulted from the inappropriateness of specific conduct because of the circumstances involved. Though the conduct may have, in varying circumstances, been protected by the first amendment, because of the location, the individuals involved or the manner of conduct, we found criminal culpability. Such a test must now be applied to the situation at hand.

The state contends that the conduct of the four defendants was in fact "otherwise disorderly" on two grounds. Initially it is claimed that the mere presence of the defendants in a room at the induction center then occupied by inductees and their relatives caused AFEES personnel to fear for their safety and such was a "substantial interference" and thus disorderly. Secondly, the state claims that the defendants' refusal to obey a police command constituted disorderly conduct. We find no merit in these contentions.

The state's contention that the mere presence of the three female and one male defendants in the induction center caused the AFEES personnel to fear for their safety and as such constituted disorderly conduct can be easily answered. In *Brown v. Louisiana* (1966), 383 U. S. 131, 86 Sup. Ct. 719, 15 L. Ed. 2d 637, the defendants were arrested and charged with disorderly conduct under a statute similar to the Wisconsin statute because of their presence in a "segregated" library after refusing a police order to leave. The state contended that the defendants' mere presence was sufficient to

"unnerve" a woman in the librarian's situation. The court, however, stated:

"We can find nothing in the language of the statute, in fact, which would elevate the giving of cause for Mrs. Reeves' discomfort, however we may sympathize with her, to a crime against the State of Louisiana." *Brown v. Louisiana, supra,* at page 141.

We deem such a rationale herein controlling. If, however, there had been some additional basis other than the defendants' mere presence upon which the commanding officer based his fear for the AFEES personnel, we would not be moved to such a holding. If the defendants had been violent or in any fashion so disorderly that their demeanor could be deemed abusive or disturbing in the eyes of reasonable persons, a different result would be reached. However, it is uncontroverted that the defendants' conduct was not violent, abusive, indecent, profane, boisterous or unreasonably loud. The defendants were merely present. Mere presence absent any conduct which tends to cause or provoke a disturbance does not constitute disorderly conduct.

"The statute does not punish a person for conduct which might possibly offend some hypercritical individual. The design of the disorderly conduct statute is to proscribe substantial intrusions which offend the normal sensibilities of average persons or which constitute significantly abusive or disturbing demeanor in the eyes of reasonable persons." *State v. Zwicker, supra,* at page 508.

Having determined that the mere presence of the defendants in the induction center was not "otherwise disorderly," we must determine whether the defendants' mere refusal to obey the commands of the police officer absent any showing of criminal conduct on the part of the defendants is disorderly conduct.

Under specific circumstances the refusal to obey a police command may constitute criminal conduct. If,

for example, the police officer orders an unlawful assembly [3] to disperse, the intentional failure or refusal of an individual to withdraw from such an assembly constitutes criminal conduct. [4] Similarly, refusal to follow the command of other public officials [5] or private individuals [6] may likewise result in criminal liability. However, to hold without limitation that any violation of a police command, whether or not lawful, constitutes disorderly conduct would be patently violative of the fourteenth amendment. [7]

Under the state's construction of our disorderly conduct statute, the fact that the defendants' conduct is in no manner disorderly is inconsequential. Merely because the police command the demonstrators to cease and desist a legal demonstration and such command is not obeyed would be sufficient to convict the demonstrators for disorderly conduct. This contention has been soundly rejected by the United States Supreme Court. In *Gregory v. City of Chicago, supra,* the defendants were arrested and charged with disorderly conduct. They were at the time peacefully demonstrating in front of the mayor of Chicago's house and had refused to disperse when so ordered by the police. The Illinois Supreme Court affirmed the conviction, the court suggested, not for the manner in which the defendants conducted their march but rather for their refusal to disperse when requested to do so by the Chicago police. The court refused such a rationale and reversed the conviction because of a lack of evidence that the demonstrators were

---

[3] Sec. 947.06 (2), Stats.
[4] Sec. 947.06 (3), Stats.
[5] Sec. 36.45, Stats.
[6] Sec. 943.13 (1) (b), Stats.
[7] *Shuttlesworth v. City of Birmingham* (1965), 382 U. S. 87, 86 Sup. Ct. 211, 15 L. Ed. 2d 176; *Brown v. Louisiana, supra; Gregory v. City of Chicago* (1969), 394 U. S. 111, 89 Sup. Ct. 946, 22 L. Ed. 2d 134.

in fact disorderly. Since neither the charge nor the Chicago city ordinance under which they were charged defined disorderly conduct as the refusal to obey a police order, however reasonable the police request and however laudable their motives, the conviction could not stand. Similarly, in *Brown v. Louisiana, supra,* at page 138, the court stated that "[p]etitioners cannot constitutionally be convicted merely because they did not comply with an order to leave the library [citations omitted]."

This court has likewise never held that the mere refusal to obey a police command constitutes disorderly conduct. While we have in several cases stated that persons having authority over public buildings must be afforded the discretion to reasonably regulate conduct therein, such regulations must be reasonably designed to preserve good order and facilitate the public uses for which the building was intended.[8]

In the present action, the defendants were legally present within the AFEES. Though we do not agree with their motives, we see no difference between their presence in support of an individual who planned to refuse induction and relatives' presence in support of an individual who planned to be inducted. The commanding officer of AFEES determined that the mere presence of the one male and three female defendants caused his personnel to fear for their safety and ordered the defendants to leave. No basis was shown for such apprehension. The record doesn't indicate that like action was taken against the remaining relatives and visitors.

The defendants were legally exercising their first amendment rights and any order in contravention of the reasonable exercise of those rights is unlawful. The arrest made here was not based on any disorderly con-

---

[8] *State v. Givens, supra; State v. Zwicker, supra; State v. Elson, supra.*

duct. It was based on the defendants purporting views which were offensive to the commanding officer. We cannot hold that the mere exercise of one's rights to freedom of speech in communicating those views constitutes disorderly conduct.

We conclude that under the stipulated facts of this case the defendants were not guilty of disorderly conduct and the judgment must be reversed.

*By the Court.*—Judgment reversed.